## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

<table>
<tr><td>

NOEL DIAZ,
      *Plaintiff,*

    v.

WARDEN HANNA, DEPUTY WARDEN
JOHN DOE, REGIONAL WARDEN JOHN
DOE, COMMISSIONER JOHN DOE,
DEPUTY COMMISSIONER JOHN DOE,
CAPTAIN HURDLE,
      *Defendants.*

</td><td>

No. 3:20-cv-1180 (VAB)

</td></tr>
</table>

## INITIAL REVIEW ORDER

On August 14, 2020, Noel Diaz ("Plaintiff"), a sentenced inmate[1] proceeding *pro se* and currently in the custody of the Department of Correction ("DOC") at Northern Correctional Institution, filed this civil rights Complaint under 42 U.S.C. § 1983 in connection with his confinement at Garner Correctional Institution ("Garner").[2] Compl., ECF No. 1 (Aug. 14, 2020).

He alleged claims under the Fourteenth and Eighth Amendments for deliberate indifference to his conditions of confinement against the DOC Commissioner John Doe, DOC Deputy Commissioner John Doe, Garner Warden Hanna, Garner Deputy Warden John Doe, Garner Captain Hurdle, and DOC Regional Warden John Doe for damages and injunctive relief. *Id.*

---

[1] The Court takes judicial notice of the public record on the Department of Correction ("DOC") website showing Mr. Diaz was sentenced to criminal possession of a pistol on October 11, 2018. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (the court may "take judicial notice of relevant matters of public record"); http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=426056.

[2] On August 21, 2020, Magistrate Judge William I. Garfinkel granted Mr. Diaz's motion to proceed *in forma pauperis. See* Order, ECF No. 11 (Aug. 21, 2020).

On August 17, 2020, Mr. Diaz filed an Amended Complaint against the same defendants for Eighth and Fourteenth Amendment violations for damages and injunctive relief. Amend. Compl., ECF No. 7 (Aug. 17, 2020).

After initial review of the Amended Complaint, the Court will permit Diaz's claims of violation of the Eighth Amendment and Fourteenth Amendment to proceed beyond initial review.

I.      **FACTUAL BACKGROUND**[3]

Mr. Diaz's allegations are difficult to discern in places, but the Court has culled the following factual background from the allegations of his Amended Complaint.

On March 7, 2020, Mr. Diaz allegedly arrived at Garner from Northern as a progression phase one to phase two in the administrative segregation program for rehabilitation. Am. Compl. ¶ 1. He allegedly spoke to Captain Hurdle about the mandatory daily groups required under the policy to progress and graduate from the mandatory rehabilitative program. *Id.* Captain Hurdle allegedly informed him that they (Garner) did not run such programs. *Id.* Mr. Diaz allegedly immediately wrote to the Warden about the issue, but he never received a response. *Id.*

Mr. Diaz allegedly realized that he had been stripped of all progressive amenities and that he was placed in an environment not fit for his rehabilitation in contravention of DOC policies. *Id.* He allegedly was no longer afforded five showers per week, daily groups, the ability to retain most of his property, and housing with only administrative inmates; at Garner, he had only three showers per week, no rehabilitative groups, mandatory out of cell time, minimal property, and officers not trained for treatment. *Id.* ¶ 2. He allegedly had been assigned to long-term punitive segregation and labeled an administrative segregation inmate, but there was no administrative

---

[3] All factual allegations are drawn from the amended complaint. *See* Compl. The Court has also reviewed the exhibits attached to the amended complaint for clarification of certain facts and dates.

program. *Id.* ¶ 3. For more than six months, he allegedly had to remain in his cell for twenty-three hours per day, only allowed out for one hour of the day. *Id.*

Mr. Diaz allegedly expressed his concerns to all available staff, including mental health staff, about how this environment was causing him to suffer mentally as he has bipolar depression. *Id.* ¶ 4. There, however, allegedly was no help. *Id.* The environment allegedly caused his mental health to exacerbate because the banging and screaming from the mental health patients and other inmates interrupted his sleep and daily schedule. *Id.* In addition, water from the toilet above allegedly leaked into his cell. *Id.*

Mr. Diaz allegedly had been expected to graduate on August 12, 2020, but he instead allegedly had a mental health "br[eak] down." *Id.* ¶ 5. Defendants allegedly then "place[d] [him] down a phase" to keep him longer due to litigation. *Id.* Mr. Diaz allegedly requested help but had it refused, and he allegedly sustained injury as a result of the failure to provide a rehabilitative environment. *Id.* He allegedly has been held under false pretenses for a mandatory administrative program that does not exist and does not afford a proper rehabilitative environment. *Id.* ¶ 6.

Mr. Diaz allegedly has suffered from the prison conditions of long-term segregation without review of whether he should still be kept on administrative segregation status. *Id.* ¶ 7. Mr. Diaz allegedly has had improper bedding; has been subjected to isolation; and has been exposed to dangerous and deranged behavior, suicide attempts and hangings, inmates banging their heads to point of bleeding, and inmates throwing feces and urine. *Id.* Defendants allegedly have been put on notice and made aware of the constitutional violations. *Id.* ¶ 8. Mr. Diaz has attached to his Amended Complaint copies of inmate request forms to Warden Hanna and Captain Hurdle and grievance forms complaining about his conditions, its negative effect on his mental health, the need for review of his administrative segregation, and his request for release.

3

*Id.* at pp. 9-18. He alleges that his grievances were unanswered and he was "stonewalled" from receiving relief. *Id.*

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

### III.   DISCUSSION

The Court construes Mr. Diaz's Amended Complaint as claiming an Eighth Amendment violation based on his conditions of confinement and lack of mental health care, and a Fourteenth Amendment violation of his procedural due process rights based on failure to review his administrative segregation. Although he has not specifically asserted a violation of the First Amendment, his allegations also may be construed as raising a claim of First Amendment retaliation.

As a preliminary matter, with respect to his claims against any supervisory officials, Mr. Diaz cannot sue these defendants for damages solely because of their supervisory position. *See Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). Indeed, "it is well settled in this Circuit

that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

In 1995, the Second Circuit determined that personal involvement of a supervisory official may be shown by evidence that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).

After 2009, however, the impact of *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), on the *Colon* factors was unclear. *See Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but declining to specifically address the issue); *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) ("*Iqbal* has ... engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*."); *Johnson v. White*, No. 9:14–cv–00715 (MAD)(DJS), 2015 WL 6449126, at *4 n. 2 (N.D.N.Y. Oct. 23, 2015) (noting that the Second Circuit had yet to decide the impact of *Iqbal* on *Colon*); *see also Koehl v. Bernstein,* No. 10 Civ. 3808(SHS)(GWG), 2011 WL 2436817, at *9 (S.D.N.Y. June 17, 2011) (noting that in *Iqbal,* the Supreme Court "explicitly rejected the argument that[] 'a supervisor's mere knowledge of his

subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution'"

(quoting *Iqbal,* 556 U.S. at 677)).

In December 2020, the Second Circuit clarified the standard for personal involvement of

supervisory officials in a Section 1983 action. *See Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir.

2020). In *Tangreti*, a counselor supervisor in a prison "argue[d] on appeal that she [wa]s immune

from suit under the doctrine of qualified immunity because her actions did not violate a statutory

or constitutional right that was clearly established at the time of the challenged conduct,"

specifically "that her liability as a supervisor of the [prison] [wa]s not clearly established." *Id.* at

614-15 (alterations and internal quotation marks omitted).

Because under *Iqbal,* "a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution," 556 U.S. at 676, the

Second Circuit held that "for deliberate-indifference claims under the Eighth Amendment against

a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective

knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Tangreti*, 983

F.3d at 616 (citing *Farmer*, 511 U.S. at 837). Thus, "there is no special rule for supervisory

liability." *Id.* at 618. "The factors necessary to establish a [§ 1983] violation will vary with the

constitutional provision at issue" because the elements of different constitutional violations vary"

and "[t]he violation must be established against the supervisory official directly." *Id.* (first

alteration in original).

A plaintiff also must establish that the supervisor's actions were the proximate cause of

the plaintiff's constitutional deprivation. *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014);

*see also Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) (plaintiff must show "an affirmative

causal link" between the supervisor's involvement and the constitutional injury). A general

allegation that a defendant failed to supervise subordinates is insufficient to establish personal involvement without a factual connection between that supervisory defendant's alleged failure and the alleged resulting harm to the plaintiff. *See Samuels v. Fischer,* 168 F. Supp. 3d 625, 639 (S.D.N.Y. 2016) (citing cases).

### A.     Eighth Amendment Claims

Because Mr. Diaz is a sentenced prisoner, his conditions of confinement claims are analyzed under the Eighth Amendment rather than the Fourteenth Amendment, which applies to claims brought by pretrial detainees. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979).

### 1.     Conditions of Confinement Claim

In *Farmer v. Brennan*, the United States Supreme Court explained that the Eighth Amendment's prohibition of cruel and unusual punishment "places restraints" and imposes duties on prison officials to provide humane conditions of confinement. 511 U.S. 825, 832 (1994). Thus, the Eighth Amendment protects against punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832-33.

To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element. *Id.* at 834, 837-38. To meet the objective element, an inmate must allege that he was incarcerated under conditions that

resulted in a "sufficiently serious" deprivation, such as the denial of a "life[ ] necessit[y]" or a "substantial risk of serious harm." *Id.* at 834.

To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

   a.   **Program Restrictions**

To the extent that Mr. Diaz asserts his Eighth Amendment claim on the restrictions on his showering, property, time in and out of his cell, and lack of rehabilitative programs, he has failed to state a deprivation of a basic human need or a condition that poses a substantial risk of serious harm. *See Pagan v. Dougherty*, No. 3:18-cv-1668 (VLB), 2019 WL 2616975 (D. Conn. June 26, 2019) (allegations that, during confinement in SRG program, a prisoner was subjected to limitations on telephone use, visits from friends and family, eligibility for parole, access to educational and vocational services, and showers and was confined in his cell for twenty-three hours per day did not support an objective component of an Eighth Amendment claim for inhumane conditions of confinement) (citing cases)); *see also Shakur v. Sieminski,* No. 07-cv-1239 (CFD), 2009 WL 2151174, at *4–6 (D. Conn. July 15, 2009) (observing that, where an incarcerated person has the opportunity to exercise either in his cell or outside of his cell, prison officials had not violated the inmate's Eighth Amendment right to basic human needs); *Moody v. Dagget*, 429 U.S. 78, 88 n.9 (1976) (prisoners have no right to rehabilitative programming).

Accordingly, the Court will dismiss Mr. Diaz's Eighth Amendment claim based on these asserted deprivations that do not satisfy the objective element of the Eighth Amendment analysis.

### b.      Unsanitary Conditions

Mr. Diaz's allegations also suggest that he was subjected to unsanitary conditions, which "can, in egregious circumstances, rise to the level of cruel and unusual punishment." *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013) (where there was "so much urine on the floor and sometimes on the toilet that the toilet required cleaning at least 15–20 times per day.... urine or defecation would splatter to the floor.... [and] inmates were not provided sufficient cleaning supplies or equipment to keep the toilet and surrounding area clean" (internal quotation marks and alterations omitted)); *see also Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) ("[T]his court and other circuits have recognized that deprivation of toiletries, and especially toilet paper, can rise to the level of unconstitutional conditions of confinement....").

Here, Mr. Diaz alleges having witnessed other inmates throwing excrement and urine and that water leaked from a toilet above into his cell. These allegations do not show, however, that he was subjected to unsanitary conditions egregious enough to deprive him of a basic human need. *Conley v. Aldi*, No. 3:18-CV-824 (VAB), 2020 WL 1333501, at *6 (D. Conn. Mar. 23, 2020) (allegations that cell contained leaky toilet, smelled of urine and mold, and did not have cold water for a period of weeks failed to state a deprivation of basic human need); *See also McNatt v. Unit Manager Parker,* No. 3:99CV1397(AHN), 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000) (finding no Eighth Amendment violation when inmates endured "stained, smelly mattresses; unclean cell; no bedding for six days; no cleaning supplies for six days; no toilet paper for one day; no toiletries or clothing for six days; no shower shoes; dirty showers; cold water that did not function properly; and smaller food portions").

10

Accordingly, this claim will be dismissed as not plausible.

### c.      Isolation, Excessive Noise and Lack of Sleep

Mr. Diaz's allegations also suggest that solitary confinement and noise from the activities of other inmates caused a deleterious effect on his mental health and sleep deprivation.

Because these conditions in combination, or alone, subjected him to deprivations of basic human needs, such as sleep or exposed him to a substantial risk or harm to his health or safety, Mr. Diaz has alleged deprivations sufficient to satisfy the objective component of the Eighth Amendment analysis. *See Walker*, 717 F.3d at 127 ("sleep is critical to human existence"); *Baltas v. Erfe*, No. 3:19CV1820 (MPS), 2020 WL 1915017, at *29 (D. Conn. Apr. 20, 2020) (isolation causing depression could satisfy the sufficiently serious deprivation); *see also Tuttle v. Semple*, No. 3:17-cv-02037 (JAM), 2018 WL 2088010, at *6 (D. Conn. May 4, 2018) (observing, in a case where the plaintiff was placed in solitary confinement for one year, that "[s]ubstantial authority suggests that the use of solitary confinement may cause grave harm, especially to inmates who have mental illness," but ultimately granting Defendants qualified immunity). As Mr. Diaz's inmate requests and grievances indicate that the Defendants plausibly received notice of such deprivations, the Court will permit these Eighth Amendment claims to proceed against Captain Hurdle and Warden Hanna, and the Doe defendants (the Commissioner, Deputy Commissioner, Deputy Warden, and Regional Warden), in their individual capacities.

### d.      Inadequate Bedding

Mr. Diaz makes a reference to "improper bedding." Am. Compl. ¶ 7. He has not provided, however, any details about how the bedding was inadequate.

To establish an Eighth Amendment claim alleging a deficient bed or mattress, courts have required a prisoner plaintiff to allege either a medical condition requiring a non-standard

mattress to protect against further serious damage to the prisoner's health or a medical condition caused by the inadequate mattress. *See Jones v. City of N.Y.*, No. 18-CV-1937 (VSB), 2020 WL 1644009, at *7 (S.D.N.Y. Apr. 2, 2020) (collecting cases). As Mr. Diaz's allegations do not provide sufficient facts to determine whether the "improper bedding" rose to the level of a constitutional violation, the Court will dismiss this claim as not plausible.

### 2.      Denial of Mental Health Care

Mr. Diaz's allegations indicate that he expressed his concerns about his mental health deterioration during his confinement to all available staff, including mental health staff, but he was not provided with relief.

To state an Eighth Amendment claim for deliberate indifference to a serious medical or mental health need, two elements must be met. The objective element requires the inmate to assert facts to demonstrate that his or her medical or mental health need or condition is "objectively a serious one." *Brock v. Wright,* 315 F.3d 158, 162 (2d Cir. 2003). In determining whether a condition is serious, the court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

The second element is subjective. To meet this element, the inmate must allege that the prison official was actually aware that his or her actions or inactions would cause a substantial risk of serious harm to him. *See Salahuddin*, 467 F.3d at 279-80. Mere negligent conduct does not constitute deliberate indifference. *See id.* at 280 (reckless indifference "entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent"). Nor does a difference of opinion between a medical provider and an inmate

regarding a diagnosis or appropriate medical treatment rise to the level of deliberate indifference. *See Chance,* 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

Construed most favorably to Mr. Diaz, the Amended Complaint raises an inference that Defendants had notice of his need for mental health care while in administrative segregation but acted with deliberate indifference to the risk of substantial harm to Mr. Diaz by failing to provide for his mental health needs.

Accordingly, this Eighth Amendment claim will proceed against the Defendants in their individual capacities.

### B.   Fourteenth Amendment Procedural Due Process Claims

Mr. Diaz raises Fourteenth Amendment concerns by alleging that his administrative segregation has not been reviewed.

The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A Fourteenth Amendment due process claim can be either procedural or substantive. A claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam).

In the prison setting, liberty interests protected by due process "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner

as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted). Courts must examine the

actual punishment received, as well as the conditions and duration of the punishment. *See Davis

v. Barrett*, 576 F.3d 129, 133-34 (2d Cir. 2009) (per curiam) (observing that a magistrate judge

was required to compare conditions of confinement to those of prisoners in general population,

as well as those in administrative and protective confinement); *Palmer v. Richards*, 364 F.3d 60,

64 (2d Cir. 2004) ("Factors relevant to determining whether the plaintiff endured an 'atypical

and significant hardship' include 'the extent to which the conditions of the disciplinary

segregation differ from other routine prison conditions' and 'the duration of the disciplinary

segregation imposed compared to discretionary confinement.'" (quoting *Wright v. Coughlin*, 132

F.3d 133, 136 (2d Cir. 1998))).

　　With respect to time limits for disciplinary confinement, a prisoner who was subjected to

a disciplinary term of thirty days of confinement in restrictive housing did not sustain a

deprivation of a liberty interest in violation of the Fourteenth Amendment's Due Process

Clause. *Sandin,* 515 U.S. at 484. This type of confinement did not give rise to a liberty interest as

an atypical and significant hardship because "[t]he regime to which [the prisoner] was subjected

... was within the range of confinement to be normally expected for one serving an indeterminate

term of 30 years to life." *Id.* at 484, 486–87. Thus, "the duration of [segregated] confinement is a

distinct factor bearing on atypicality and must be carefully considered." *Colon v. Howard,* 215

F.3d 227, 231 (2d Cir. 2000); *compare Abrams v. Erfe*, No. 17 Civ. 1570 (CSH), 2018 WL

691714, at *13 (D. Conn. Feb. 2, 2018) (holding that a seventeen-day confinement in segregation

alone did not constitute a sufficient deprivation of liberty subject to due process protection

because the restriction imposed no "atypical and significant hardship" in relation to that plaintiff's fifty-one-year sentence of imprisonment), *with Ellerbe v. Jason*, No. 12 Civ. 580 (MPS), 2015 WL 1064739, at *5 (D. Conn. Mar. 11, 2015) (holding a "very long period of segregation," such as more than 305 days "is sufficiently atypical to trigger due process protections" (citing *Palmer,* 364 F.3d at 65)); *see also Palmer,* 364 F.3d at 64-65 ("Where the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." (internal quotation marks omitted)).

As a result, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." *Davis*, 576 F.3d at 133; *Kalwasinski v. Morse*, 201 F.3d 103, 107-08 (2d Cir. 1999) (discussing factors relevant to deciding if confinement in SHU constitutes an atypical hardship).

Mr. Diaz's Amended Complaint indicates that his placement in the administrative segregation program began before his Garner confinement on March 7, 2020. *See* Am. Compl. Thus, the Court construes his pleading most broadly for purposes of initial review to have sufficiently raised a liberty interest based on the duration of his placement in administrative segregation.

Due process requires that prison officials engage in periodic review of the administrative confinement, but it does not require that an inmate receive a hearing, be present, or provide statements for these periodic reviews. *Proctor v. LeClaire*, 846 F.3d 597, 609-12 (2d Cir. 2017). In *Proctor,* the Second Circuit directed that a periodic review must provide a meaningful evaluation that considers recent conduct in determining whether valid institutional safety reasons justify continued segregation. *Id.* at 610-11. Prison officials cannot merely "go through the

motions of nominally conducting a review meeting when they have developed a pre-review conclusion that the inmate will be confined in [administrative segregation] no matter what the evidence shows." *Id*. at 610.

Mr. Diaz has sufficiently alleged a Fourteenth Amendment procedural due process violation on the basis that he has not received review of whether he should remain in administrative segregation as required under the Fourteenth Amendment.

Accordingly, Mr. Diaz's Fourteenth Amendment procedural due process claim will proceed against the Defendants in their individual capacities.

### C.      **First Amendment Retaliation Claim**

Mr. Diaz refers to the Defendants keeping in administrative segregation longer in retaliation for him filing litigation. Am. Compl. ¶ 5. The Court construes this allegation as raising a First Amendment retaliation claim.

To prevail on a First Amendment retaliation claim, a plaintiff must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019); *see also Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (same).

Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance. *See Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) ("It is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983."); *Booth v. Comm'r of Corr.*, No. 19-CV-100

(MPS), 2019 WL 919580, at *5 (D. Conn. Feb. 25, 2019) ("Filing complaints and grievances is protected activity.").

"An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon*, 938 F.3d at 40 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). To sufficiently allege causation, the inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (second alteration in original) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)). "Some of the facts often used to determine retaliatory motive may include (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing motivation." *Ramos v. Semple*, No. 3:18-CV-1459 (VAB), 2019 WL 2422875, at *2 (D. Conn. June 10, 2019) (slip op.).

Courts treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012). Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (internal quotation marks omitted).

Even assuming he has plausibly alleged the first two elements of his retaliation claim, Mr. Diaz must allege some facts to establish that his protected conduct was a plausible substantial or motivating factor in the alleged adverse action. *Moore*, 92 F. Supp. 3d at 121. But

Mr. Diaz's allegations are conclusory and unsupported by other allegations suggesting that this litigation was a substantial or motivating cause for a retaliatory animus against him. Moreover, the Amended Complaint fails to provide any nonconclusory allegations to state how each defendant had involvement in the alleged retaliatory adverse action.

Accordingly, the Court will dismiss this claim as not plausible.

### D.     Official Capacity Claims

Mr. Diaz's Amended Complaint seeks injunctive relief for his removal from the administrative segregation program and/or to permit him to graduate immediately from the program. Am. Compl. ¶ 9.

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155-56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005) (describing the holding of *Ex parte Young*). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment— for prospective injunctive relief from violations of federal law." *In re  Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (internal quotation marks omitted).

The exception to Eleventh Amendment immunity, however, "does not permit judgments against state officers declaring that they violated federal law in the past." *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief."). Moreover, any claims for money damages against the

defendants, who are state employees, in their official capacities are barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

The Second Circuit has held that an inmate's request for prospective injunctive relief in connection with conditions of confinement at a particular correctional institution becomes moot when that inmate is discharged from that institution, is transferred to a different institution, or has received the relief requested. *See Shepard v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed").

Mr. Diaz requests removal from "the Program and or allow for graduation immediately as Defendants caused injury by way of worsening [his] [bipolar] [d]isorder[.]" *See* Am. Compl. ¶ 9. But, as the docket in this case reflects, Mr. Diaz was moved to another facility, Northern Correctional Institution. *See* Notice, ECF No. 12 (Sept. 23, 2020). His request for injunctive relief regarding Garner then is now moot.[4] His request for removal or graduation from the administrative segregation program, however, also may constitute relief from the ongoing Fourteenth Amendment due process violation for failure to review his administrative segregation; thus, the Court will permit this claim to proceed against the DOC interim commissioner Angel Quiros in his official capacity. *See Ex parte Young*, 209 U.S. at 157 (defendant official must have some connection with enforcement of allegedly

---

[4] On April 16, 2021, Mr. Diaz filed a notice of address change indicating that he is now, again, back at Garner Correctional Institution. *See* Notice, ECF No. 13 (Apr. 16, 2021). To the extent Mr. Diaz can demonstrate that his request for injunctive relief is not moot now that he is again at Garner, he may so indicate in an Amended Complaint.

unconstitutional act);[5] *see also* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity ... ceases to hold office while the action is pending[,] [and] [t]he officer's successor is automatically substituted as a party.").

Accordingly, the Court will instruct the Clerk of Court to serve this Amended Complaint on Interim Commissioner Angel Quiros in his official capacity.

### ORDERS

(1) The case shall proceed on Mr. Diaz's Eighth Amendment claims against defendants in their individual capacities based on his conditions of isolation, noise and sleep deprivation that exacerbated his mental health; on his Eighth Amendment claims against defendants in their individual capacities for deliberate indifference to his mental health care; and on his Fourteenth Amendment claims against defendants in their individual capacities for failure to review his administrative segregation. Mr. Diaz may proceed against Interim Commissioner Angel Quiros in his official capacity on his Fourteenth Amendment request for removal from the administrative segregation program.

All other claims are **DISMISSED** without prejudice to filing an amended complaint, by **May 28, 2021**, to correct the deficiencies identified in this Initial Review Order.

(2) The Clerk of Court shall verify the current work address of Warden Hanna and Captain Hurdle who are alleged to work at Garner Correctional Institution with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint (ECF No. 7) to them at their confirmed addresses by **May 21, 2021**, and report on the status of the waiver request by **June 5, 2021**. If a Defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals

---

[5] *See* https://portal.ct.gov/DOC (last visited Apr. 22, 2021) (showing that Angel Quiros is the current Interim Commissioner).

Service on that defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal Service is directed to effect service of the amended complaint and this Order on Interim Commissioner Angel Quiros in his official capacity at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, by **May 21, 2021** and to file a return of service by **May 28, 2021**.

(4) The Clerk of Court cannot effect service on a Doe defendant without that defendant's full name and current work address. Plaintiff is directed to obtain this information during discovery and to file a notice containing the information with the Court. **Once a defendant Doe has been identified, the Court will order that he or she be served with a copy of the Amended Complaint. Failure to identify a Doe defendant will result in the dismissal of all claims against that defendant.**

(5) The Clerk of Court shall send a courtesy copy of the amended complaint and this Order to the DOC Office of Legal Affairs.

(6) The Defendants shall file a response to the amended complaint, either an Answer or motion to dismiss, by **August 6, 2021**. If the Defendants choose to file an Answer, defendants shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, consistent with Federal Rules of Civil Procedure 26-37, shall be completed by **November 5, 2021**. Discovery requests need not be filed with the Court.

(8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed by **January 7, 2022**.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(11) If Mr. Diaz changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write **"PLEASE NOTE MY NEW ADDRESS"** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(12) Mr. Diaz shall utilize the Prisoner Efiling Program when filing documents with the Court. Mr. Diaz is advised that the Program may be used only to file documents with the Court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of April, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE